

CLERK'S OFFICE
A TRUE COPY
May 06, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>All location history data and all geofence advertising location<br>data associated with the Google LLC advertising ID GAID<br>#1007546014033, more fully described in Attachment A. | )<br>)<br>)<br>)<br>)<br>) |

Case No.  **21-M-372 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC Section 1513(b)(2) | Retaliating Against a Witness, Victim or an Informant |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Digitally signed by RICKY HANKINS
DN: c=US, o=U.S. Government, ou=Dept of
Justice, ou=ATF, cn=RICKY HANKINS,
0.9.2342.19200300.100.1.1=1500100169945 6
Date: 2021.05.06 13:27:58 -05'00'

*Applicant's  signature*

Special Agent Rick Hankins, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:  5-6-21

*Judge's signature*

City and state:  Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent of the United States Justice Department's Bureau of

Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field

Office. I have been so employed since April 2003. My duties as a Special Agent with ATF

include investigating alleged violations of the federal firearms, explosives, and arson statutes.

2.      I have completed approximately 26 weeks of training at the Federal Law

Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy.  That

training included various legal courses related to constitutional law as well as search and seizure

authority. Additionally, I have received training on how to conduct various tasks associated with

criminal investigations, such as interviewing, surveillance, and evidence collection.

3.      In addition to my duties as a criminal investigator, I am also an ATF Certified

Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the

origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year

training program that centered on various fire science topics including, but not limited to:

chemistry, fire dynamics, and building construction. The two-year ATF CFI certification

program consisted of college courses, written exams, research papers, reading assignments,

practical training exercises, and test burns of various materials.  I am re-certified annually as an

ATF CFI. To date, I have participated in over 275 fire scene examinations and have testified as

an expert.  Additionally, I have been certified as a fire investigator by the International

Association of Arson Investigators since June 2011.  I have received over 1,400 class hours of

1

fire related training. Furthermore, I have been an instructor regarding fire-related topics on 38 occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 200 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

4.      As an ATF agent, I have been deployed to riots involving arsons, including the Sherman Park riots in 2016 and the Minnesota riots in 2020. I know from training and experience that individuals who commit crimes during riots commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media, including Facebook.

5.      I have previously applied for and received search and arrest warrants related to the crime of arson, as well as other crimes.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence of travel in interstate commerce or use of a facility of interstate commerce with intent to riot, in violation of Title 18, United States Code, Section 2101, conspiracy to commit arson, in violation of Title 18, United

2

States Code, Section 844(n), arson of commercial property, in violation of Title 18, United States Code, Section 844(i), burglary involving controlled substances, in violation of Title 18, United States Code, Section 2118(b), and conspiracy to commit burglary involving controlled substances, in violation of Title 18, United States Code, Section 2118(d).

8.      I submit this affidavit for the limited purpose of demonstrating sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge about this matter.

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

9.      Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic communications using the networks provided by cellular service providers.  Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

10.      I also know that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if the user enables wi-fi connectivity.  These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network.  A tablet such as an iPad is an example of a device that may not have cellular service but that could connect to the Internet via wi-fi.  Wi-fi access points, such as those created through the use of a router and offered in places like homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network.  In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

11.      Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality.  Bluetooth allows for short-

3

range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

12. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the device can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the apps' operation.

13. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every device using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

14. In addition, based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (*e.g.,* Gmail, Hangouts, Duo, Voice), navigation (Maps), search engine (Google Search), and file creation, storage, and sharing (*e.g.*, Drive, Keep, Photos, and YouTube). Many of these services are accessible only to users who have signed in to their Google accounts. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address (*e.g.*, example@gmail.com). Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed in to a Google account.

15.     Based on my training and experience, I also know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices.  A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account.  Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

16.     Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device.  Google apps exist for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

17.     According to my training and experience, as well as open-source materials published by Google, I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device.  That Location History is stored on Google servers, and it is associated with the Google account that is associated with the device.  Each accountholder may view their Location History and may delete all or part of it at any time.

18.     Based on my training and experience, I know that the location information collected by Google and stored within an account's Location History is derived from sources including GPS data and information about the wi-fi access points and Bluetooth beacons within

5

range of the device. Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data. Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by Google as a "maps display radius," for each latitude and longitude point.

19. Based on open-source materials published by Google and my training and experience, I know that Location History is not turned on by default. A Google accountholder must opt-in to Location History and must enable location reporting with respect to each specific device and application on which they use their Google account in order for that usage to be recorded in Location History. A Google accountholder can also prevent additional Location History records from being created at any time by turning off the Location History setting for their Google account or by disabling location reporting for a particular device or Google application. When Location History is enabled, however, Google collects and retains location data for each device with Location Services enabled, associates it with the relevant Google account, and then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. As noted above, the Google accountholder also has the ability to view and, if desired, delete some or all Location History entries at any time by logging into their Google account or by enabling auto-deletion of their Location History records older than a set number of months.

20. Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above,

6

devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google accountholder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

21. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provide clues to their identity, location, or illicit activities.

22. Additionally, Google assigns a unique identifier to each Google subscriber for advertising and marketing purposes. This unique advertising identifier is known as the Google advertising ID (or GAID) or Google Account ID (also GAID). Google is capable of capturing location data for specific accounts through GAID that is independent of the Location History feature. In fact, the GAID can capture location data even when the location services feature on a cellphone is disabled.

23. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (*i.e.,* session) times and durations, the types of service utilized, the

7

status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## PROBABLE CAUSE

### Fire at 2537-2541 North Martin Luther King Drive, Milwaukee, WI

24.     On December 6, 2019, at approximately 4:31 a.m., the Milwaukee Fire Department (MFD) responded to a fire at 2537-2541 North Martin Luther King ("MLK") Drive in the City of Milwaukee, Wisconsin. The property was a two-story commercial structure that housed two businesses on the first floor: a Metro PCS cellphone store (assigned address of 2537 North MLK Drive); and Hair Fantasys (sic) salon (assigned address of 2541 North MLK Drive).

25.     Investigators from ATF, the Wisconsin Department of Justice, the Milwaukee Police Department (MPD), and MFD subsequently conducted a joint fire scene examination on December 6, 2019, to determine the origin and cause of the fire. Based on witness statements, early photographs, and fire pattern analysis, investigators determined the fire originated inside the Hair Fantasys salon. During excavation inside the salon, investigators located a field stone weighing approximately 18 pounds laying on the floor near remnants of a charred duffle bag or backpack that emitted a strong odor consistent with the presence of gasoline. Additionally, investigators located melted red plastic consistent with a gasoline container melted to the remnants of the backpack or duffle bag.

8

26.     ATF and MPD subsequently recovered surveillance video from the following locations in relation to the fire that damaged 2537-2541 North Martin on December 6, 2019:

a) <u>Mobil Gas Station</u> located at 3510 North 7th Street, Milwaukee, WI. The surveillance video was obtained by MPD and inventoried as Item #19043983 under Investigation # 193400018. The surveillance video time stamp was found to be approximately 8 minutes slower than real time.

b) <u>Milwaukee Health Services, Inc</u>. located at 2555 North MLK Drive, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #12. The surveillance video time stamp was found to be approximately 11 hours 58 minutes faster than the official time according to www.time.gov.

c) <u>Clara Mohammad School</u> located at 317 West Wright Street, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #6. The surveillance video time stamp was found to be approximately 1 minute faster than the official time according to www.time.gov.

d) <u>BP Gas Station</u> located at 406 West Center Street, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #19. The surveillance video time stamp was found to be accurate when compared to www.time.gov.

e) <u>All Peoples Church</u> located at 2600 North 2nd Street, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #17. The surveillance video time stamp was found to be approximately 50 minutes faster than the official time according to www.time.gov.

f) <u>Bouchards</u> clothing store located at 2400 North MLK Drive, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #18. The surveillance video time stamp was found to be approximately 1 hour 24 minutes faster than the official time according to www.time.gov.

g) <u>Northwood Apartments</u> located at 2520 North MLK Drive, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #13. The surveillance video time stamp was found to be approximately 6 minutes faster than the official time according to www.time.gov.

9

h) <u>Milwaukee County Office on African American Affairs (OAAA)</u> located at 2578 North MLK Drive, Milwaukee, WI. The surveillance video was obtained by ATF and inventoried as Item #15. The surveillance video time stamp was found to be approximately 10 minutes slower than the official time according to www.time.gov.

i) <u>Milwaukee Police Department Traffic Camera</u> located on the southwest corner of the intersection of North MLK Drive and Center Street. The surveillance video was obtained by MPD and inventoried as Item #20000203 under Investigation # 193400018. The surveillance video time stamp was found to be accurate.

27. The following is a summary compilation of relevant images captured by the multiple surveillance systems:

28. At approximately 3:45 a.m., the Milwaukee Police Department traffic camera mounted on the corner of North Martin Luther King (MLK) Drive and Center Street captured images of a grey or silver four door sedan with a sunroof that traveled southbound on MLK and turned eastbound on Center Street, and then turned southbound on North 2nd Street.

29. At approximately 3:46 a.m. (adjusted time), camera #5 at Bouchards captured images of a vehicle's headlights that traveled southbound on 2nd Street and appeared to stop near the intersection of Meinecke Avenue. At approximately 3:48 a.m. (adjusted time), camera #5 captured images of two sets of vehicle headlights that traveled westbound on Meinecke Avenue and then northbound on 2nd Street and stop near the intersection. At approximately 3:49 a.m. (adjusted time), the same camera captured vehicle headlights on 2nd Street, which illuminated at least one person on foot. Within seconds, camera #5 captured two sets of vehicle headlights travel northbound on 2nd Street and out of view. At about that same time, a third vehicle traveled

10

southbound from 2nd Street and turned westbound on Meinecke Avenue and was captured by camera #2 as it drove by the south side of Bouchards.

30.     At approximately 3:49 a.m. (adjusted time), the playground camera at Northwood Apartments captured images of an SUV that traveled northbound on 2nd Street and then turned westbound on Wright Street.  Approximately 10 seconds later, the same camera captured images of a vehicle that also traveled northbound on 2nd Street and westbound on Wright Street.

31.     At approximately 3:51 a.m., an MPD traffic camera mounted on the corner of North MLK Drive and Center Street captured images of a grey or silver four door sedan with a sunroof that traveled northbound on MLK Drive and continued north through the intersection.

32.     At approximately 3:57 a.m., an MPD traffic camera mounted on the corner of North MLK Drive and Center Street captured images of a grey or silver four door sedan with a sunroof that traveled southbound on MLK Drive through the intersection.  The vehicle appeared to be similar to the vehicle that was headed northbound about six minutes earlier.

33.     At approximately 3:59 a.m. (adjusted time), Bouchards' camera #4 captured images of a car that traveled southbound on MLK Drive and turned eastbound on Meinecke Avenue.  The images of that car were similar to those of the car that had traveled northbound on MLK Drive from Meinecke Avenue at approximately 3:50 a.m. (adjusted time).   At approximately 3:59 a.m., the car (with the sunroof) turned eastbound on Meinecke Avenue and was followed by a car that had been eastbound on Meinecke Avenue (west of MLK Drive).

34.     The two vehicles were subsequently observed on camera #5 travel eastbound through the 2nd Street intersection and both vehicles appeared to have turned northbound in the alley located between 1st and 2nd Streets.

11

35.     At approximately 4:00 a.m. (adjusted time), the Playground camera at Northwood Apartments captured images of two sets of vehicle headlights that traveled northbound in the alley between 1st and 2nd Streets from south of Wright and crossed over Wright Street into the alley north of Wright Street.  At approximately 4:01 a.m. (adjusted time), the Playground camera captured images of one vehicle that traveled southbound on 1st Street and turned eastbound on Wright Street.  Investigators examined the surveillance video footage at All Peoples Church located at 2600 North 2nd Street for this time frame and did not observe any vehicle exit the alley between 1st and 2nd Street northbound.  However, a vehicle was observed traveling northbound on 1st Street and continued north through the intersection of 1st Street and Clark.  Your affiant later examined the alley located between 1st and 2nd Streets and found an open lot area immediately south of 2547 South 1st Street that showed signs of tire tracks from the alley to 1st Street.  This open area was the only access point for vehicles to travel between the alley and 1st Street.  Therefore, it is reasonable to conclude the two vehicles captured traveling northbound in the alley from Wright Street on the Playground camera subsequently traveled east through the open lot, with one vehicle subsequently turning south on 1st Street while the other turned north.

36.     At approximately 4:05 a.m. (adjusted time), Bouchards' camera #5 captured headlights of a vehicle that traveled westbound on Meinecke Avenue and then northbound on 2nd Street.

37.     At approximately 4:05 a.m. (adjusted time), the Playground camera at Northwood Apartments captured images of a car that traveled slowly northbound on 2nd Street and crossed over Wright Street and out of frame.

38.     At approximately 4:06 a.m. (adjusted time), the surveillance camera at All Peoples Church captured images of vehicle headlights that illuminated the south exterior wall of

12

the church in a manner consistent with a vehicle turning eastbound on Clark Street from northbound 2nd Street. Moments later a vehicle appeared traveling eastbound on Clark Street. The vehicle then turned southbound on 1st Street.

39.     At approximately 4:16 a.m. (adjusted time), the Playground camera at Northwood Apartments captured images of at least one person walking southbound on the east side of 2nd Street.

40.     The Playground camera then captured two individuals walk westbound at approximately 4:17 a.m. (adjusted time) on the north sidewalk of Wright Street. One of the individuals appeared to be carrying a bag with a strap over his/her shoulder.

41.     At approximately 4:19 a.m. (adjusted time), camera #2 at Clara Mohammad School captured two subjects walk westbound on Wright Street and cross MLK Drive.

42.     The first subject (Subject #1) wore a light colored hooded sweatshirt with colored pants. Subject #1 carried a shoulder strapped bag on his/her right shoulder which he/she readjusted several times throughout the videos. The second subject (Subject #2) wore a dark hooded sweatshirt and dark pants. During the footage captured by camera #2 at the Clara Mohammad School, a light-colored object can be seen under Subject #2's right arm and held close to their body.

43.     At approximately 4:20 a.m. (adjusted time), the two subjects walked northbound from Wright Street down the alley running parallel between Vel R. Phillips Avenue and MLK Drive on camera #1 at Clara Mohammad School. Subject #1 continued to hold the shoulder bag on his/her right shoulder while Subject #2 carried the light-colored object in his/her left hand.

44.     At approximately 4:21 a.m. (adjusted time), camera #2 at Northwood Apartments captured at least one person walk northbound in the alley behind 2537-2541 North MLK Drive.

13

45.     At approximately 4:22 a.m. (adjusted time), the Clara Mohammad School camera captured Subject #2 walk eastbound near 2537-2541 North MLK Drive while Subject #1 continued to walk northbound down the alley.

46.     At approximately 4:23 a.m., camera #D23 at Milwaukee Health Services captured Subject #1 walking north through the alley west of Milwaukee Health Services.

47.     At approximately 4:24 a.m. (adjusted time), camera #D21 captured Subject #1 walk north through the alley towards Clark Street. It appeared that Subject #1 was wearing a dark-colored material over his/her face.

48.     At approximately 4:24 a.m. (adjusted time), camera #D27 captured Subject #1 turn eastbound on Clark Street.

49.     Also at approximately 4:24 a.m. (adjusted time), camera #D1 captured Subject #1 walk eastbound on Clark Street and turn southbound MLK Drive.

50.     At approximately 4:25 a.m. (adjusted time), camera #D28 captured Subject #1 walk southbound on MLK Drive and stop approximately 2-3 times while walking southbound in order to look behind him/her.  Camera #D28 also captured Subject #1 stop south of 2537 North MLK Drive and disappear west off camera.

51.     At approximately 4:26 a.m. (adjusted time), the West Side camera at Northwood Apartments captured images of a person who walked southbound on the sidewalk in front of 2537-2541 North MLK Drive and then west (up the stairs) and along the south wall of 2537-2541 North MLK Drive.

52.     At approximately 4:27 a.m. (adjusted time), the West Side camera at Northwood Apartments captured images of two people who walked east along the south wall of 2537-2541 North MLK Drive and then down the stairs and northbound on the sidewalk out of view.

14

53.     Camera #D28 at Milwaukee Health Services the captured both subjects walk north on the sidewalk and disappear into a doorway until a Milwaukee County Bus passed. Subject #2 subsequently threw an object into 2537-2541 North MLK Drive. Subject #2 then immediately traveled east across MLK Drive. As Subject #2 crossed the street, Subject #1 put his/her shoulder bag on the ground and lit it on fire. Once the bag was burning, Subject #1 threw the bag into 2537-2541 N. MLK Drive. Both subjects continued east through the vacant lot directly east of 2537-2541 North MLK Drive.

54.     At approximately 4:30 a.m. (adjusted time), camera #D24 at Milwaukee Health Services captured both subjects travel on foot north through the alley located between MLK Drive and 2nd Street. Both subjects then turned eastbound through the vacant lot to the south of 2563 North 2nd Street.

55.     At approximately 4:31 a.m. (adjusted time), the surveillance camera at All Peoples Church captured images of vehicle headlights illuminate the east side of 1st Street and move from south to north.  Moments later, a vehicle traveled northbound on 1st Street through the Clark Street intersection and disappeared out of frame.

56.     Also at approximately 4:31 a.m. (adjusted time), the Clark Street fishbowl camera at Milwaukee Health Services captured an SUV consistent with the SUV observed at approximately 3:50 a.m. travel eastbound on Clark and then northbound on MLK Drive.

57.     Based on the totality of the information available, this fire was classified as incendiary.

58.     ATF previously applied for and obtained a federal search warrant requesting the identification of all devices in suspect areas at or near the time of the fire, as well as times prior

15

to the fire. One specific area was located on North 2nd Street immediately north of Meinecke Avenue, as depicted below:



59.     Google reported that Device ID -703841387 was located within the geographic

area depicted above on December 6, 2019 between 3:46:19am – 3:49:24am.  The accuracy of the

location was within 13-16 meters as reported by Google.  Also according to Google records,

Device ID -703841387 is associated with Google Account ID (GAID) #1007546014033, which

is an account associated with a Samuel R. Johnson Sr., and an email address of

samuelrjohnsonsr@gmail.com.

Case 2:21-mj-00372-SCD   Filed 05/06/21   Page 18 of 21   Document 1

## **CONCLUSION**

60.     Based on the foregoing, I request that the Court issue the proposed search warrant.

61.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Google.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Case 2:21-mj-00372-SCD   Filed 05/06/21   Page 19 of 21   Document 1

## <u>ATTACHMENT A</u>

## **Property To Be Searched**

This warrant is directed to Google LLC and applies to:

(1) Location History data and all geofence advertising location data associated with the
    following Google advertising ID (or Google Account ID - GAID) numbers:
    #1007546014033
    for the following time period:
    December 6, 2019 1:00AM (CST) – December 6, 2019 7:00AM (CST)

<u>**ATTACHMENT B**</u>

**I.   Information to be disclosed by Google**

The information described in Attachment A, via the following process:

1.  Google shall query location history data for GAID #1007546014033 as described in

    attachment A.  The location data should be sourced from information including GPS

    data, cellular data, and information about visible wi-fi points and Bluetooth beacons

    transmitted from devices associated with GAID #1007546014033 during the

    following time period:

    December 6, 2019 1:00AM (CST) – December 6, 2019 7:00AM (CST)

2.  The location data should include latitudinal and longitudinal coordinates, dates, and

    times for GAID #1007546014033 for the abovementioned timeframe.